# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAMPAIGN LEGAL CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-0340 (ABJ) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, Campaign Legal Center, submitted a request to the Department of Justice under the Freedom of Information Act, 5 U.S.C. § 552, seeking records relating to "President Trump's allegations and proposed investigation of 'widespread voter fraud.'" Compl. [Dkt. # 1] ¶ 1. In response to the request, the government released six pages of responsive records, including an email chain, with partial redactions pursuant to FOIA Exemption 6. *See* 5 U.S.C. § 552(b)(6). Plaintiff brought this suit against the government on February 13, 2018, challenging only the redaction of the names in the email chain. Compl., "Requested Relief" at 6–7. The government subsequently released two of the names, including the name of the author of the original email, Hans von Spakovsky of the Heritage Foundation. His email, which was ultimately forwarded to Attorney General Jeff Sessions, sought a position on the President's commission on voter fraud, which he later obtained. Ex. E to Vanessa R. Brinkmann Decl. [Dkt. # 13-2] ("Redacted Email").

The government continues to the withhold the names of three other individuals who received and/or were mentioned in von Spakovsky's original email on the ground that revealing

their identities would constitute an unwarranted invasion of their personal privacy. The government filed a motion for summary judgment, and plaintiff opposed it and filed its own cross motion for summary judgment.

Because the Court finds that the public has an interest in knowing about the formation of the Commission, including whether any other individual mentioned in the email was ultimately appointed alongside von Spakovsky, it finds that the release of the three individuals' names would not constitute an "unwarranted invasion of personal privacy" under 5 U.S.C. § 552(b)(6), and the names are not exempt from release.

## BACKGROUND

The Presidential Advisory Commission on Election Integrity

On May 11, 2017, President Trump issued an Executive Order establishing the Presidential Advisory Commission on Election Integrity ("the Commission"). Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017). The Commission, which was "solely advisory" in nature, was tasked with studying ways to improve the public's confidence in federal elections and to investigate "vulnerabilities in voting systems and practices . . . that could lead to improper voter registrations and improper voting, including fraudulent voter registrations and fraudulent voting." *Id.* The Commission was directed to submit a report to the President with its findings, and it was set to terminate thirty days after submitting the report. *Id.* at 22,390. In order to accomplish its mission, the Commission was authorized to "hold public meetings and engage with Federal, State, and local officials, and election law experts, as necessary." *Id.* at 22,389.

The Executive Order states that the Vice President shall chair the Commission, and that the President shall appoint up to fifteen additional members, "who shall include individuals with knowledge and experience in elections, election management, election fraud detection, and voter

2

integrity efforts, and any other individuals with knowledge or experience that the President determines to be of value to the Commission." *Id.* at 22,389. On the day the Commission was established, the President named Vice President Mike Pence as the chair and Kansas Secretary of State Kris Kobach as Vice-Chair, and he appointed five additional commission members.[1] A month and a half later, on June 29, 2017, the President added Hans von Spakovsky, a senior legal fellow at the Heritage Foundation and the author of the email at issue in this litigation, to the Commission.[2]

On July 11, 2017, a group of Democrats on the Senate Judiciary Committee sent a letter to Attorney General Sessions and Acting Assistant Attorney General Wheeler seeking information on what they characterized as "apparent coordination" between the Department of Justice and the Commission.[3] The Senators expressed their concern that the Commission sent a letter requesting "sensitive voter roll data from state election officials" on the same day DOJ issued a letter to forty-four states requesting information about state-level procedures for maintaining voter registration lists. Senators' July 2017 Letter. They noted that "[t]he Commission's June 28 request for voter data has been met with resistance from state election

---

[1]     Statements & Releases, President Announces Formation of Bipartisan Presidential Commission on Election Integrity, May 11, 2017, https://www.whitehouse.gov/briefings-statements/president-announces-formation-bipartisan-presidential-commission-election-integrity/.

[2]     Nomination & Appointments, President Donald J. Trump Announces Key Additions to his Administration, June 29, 2017, https://www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-key-additions-administration-4/.

[3]     Klobuchar, Feinstein, Whitehouse, Senate Judiciary Committee Democrats Ask Justice Department Whether the Administration Has the Legal Authority to Request Sensitive Voter Information, United States Senator Amy Klobuchar, July 11, 2017, https://www.klobuchar.senate.gov/public/index.cfm/2017/7/klobuchar-feinstein-whitehouse-senate-judiciary-committee-democrats-ask-justice-department-whether-the-administration-has-the-legal-authority-to-request-sensitive-voter-information. ("Senators' July 2017 Letter").

officials from both parties, and forty-four states have refused to provide the Commission with all of the data it requested." *Id.*

On September 26, 2017, Senators sent another letter to Attorney General Sessions specifically seeking information about his potential involvement in von Spakovsky's appointment to the Commission.[4] This inquiry was prompted by the partial release of the email chain that is at issue in this litigation. The Senators sent a "follow up" letter on October 17, 2017 regarding their outstanding request for information concerning DOJ's involvement with the Commission and expressing growing concern about the Commission's work which they viewed to be conflict with the DOJ's duty to protect voters' rights.[5]

The Commission did not last long. President Trump disbanded it on January 3, 2018, citing the refusal of many states to comply with the Commission's data requests. Exec. Order No. 13,820, 83 Fed. Reg. 969 (Jan. 3, 2018); Statements and Releases, Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity, Jan. 3, 2018,

---

4        Letter from Sen. Sheldon Whitehouse, et al. to Attorney General Jeff Sessions, et al., Sept. 26, 2017, https://www.whitehouse.senate.gov/imo/media/doc/170926_Letter%20to%20DOJ%20-%20Election%20Commission.pdf ("Senators' September 2017 Letter").

5        Letter from Sen. Sheldon Whitehouse, et al. to Attorney General Jeff Sessions, et al., Oct. 17, 2017, https://www.whitehouse.senate.gov/imo/media/doc/171017_Letter%20to%20DOJ.pdf ("Senators' October 2017 Letter"). This letter noted that since their initial request for information:

> [A]dditional documents have come to light evidencing the Department's involvement with the Commission's workings. This is concerning, particularly in light of another recent court production showing Commission Vice Chair Kris Kobach's plans to dismantle the National Voter Registration Act. As we have written before, it would be a low moment for the Department to have a been a facilitator of Mr. Kobach's efforts to suppress voter access by perpetuating the myth of widespread voter fraud.

*Id.* at 1–2.

https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/.

The FOIA Request

On February 15, 2017, plaintiff submitted a FOIA request to the Office of Information Policy ("OIP") of DOJ seeking records concerning:

a) President Trump's public voter fraud allegations,
b) any actual or potential investigation into alleged voter fraud,
c) any actual or potential executive order related to alleged voter fraud,
d) the creation of a commission or other agency to investigate or otherwise address alleged voter fraud, or any proposal to create such commission or agency,
e) any private organization, such as True the Vote or King Street Patriots, that addresses claims of voter fraud or electoral integrity,
f) any potential amendments to the National Voter Registration Act

Ex. A to Vanessa R. Brinkmann Decl. [Dkt. # 13-2] ("FOIA Request") at 4–5. The request also sought communications to or from:

a) the presidential transition team about voter fraud or electoral integrity,
b) Kris Kobach, Kansas Secretary of State, or
c) Gregg Phillips, Catherine Engelbrecht, or any employee of any private organization, such as True the Vote or King Street Patriots, that addresses claims of voter fraud or electoral integrity

*Id.* at 5. The time frame for the request was November 9, 2016 to the "present." *Id.* at 4. In the request, plaintiff stated that it became interested in this information following the President's comments that a "major investigation" into alleged voter fraud was necessary, which it feared could be the "first step in an agenda to make it harder to vote." FOIA Request at 3–4. Although at the time the President had expressed the need for an investigation, *id.* at 3–4, a commission had not yet been established.

On August 22, 2017, OIP notified plaintiff that the searches had been completed, and it released six pages of responsive records, including the redacted email chain which is the subject

5

of this litigation. Vanessa R. Brinkmann Decl. [Dkt. # 13-2] ("Brinkmann Decl.") ¶ 5; Ex. C to Brinkmann Decl. [Dkt. # 13-2] ("OIP Final Response"). OIP initially redacted the names of several individuals who appeared in the email chain, as well as the contact information of those individuals, and one incidental remark about personal travel plans, pursuant to FOIA Exemption 6, "which pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties." OIP Final Response at 1, citing 5 U.S.C. § 552(b)(6).

Plaintiff filed an administrative appeal which was denied, Ex. 4 to Compl. [Dkt. # 1-4]; Ex. 5 to Compl. [Dkt. # 1-5], and then it filed this suit on February 13, 2018 arguing that the release of the redacted names that appeared in the email chain "would not constitute a clearly unwarranted invasion of personal privacy." Compl. ¶ 11. The complaint did not challenge the redactions of phone numbers, email addresses, or other private data in the records produced. *Id.*; *see also id.* "Requested Relief" at 6–7 (seeking an order to disclose the redacted names). Nor did plaintiff challenge the adequacy of the agency's search. *See generally* Compl.

Following plaintiff's suit, the agency reconsidered its withholdings and released the names of two individuals who appeared in the email chain, Hans von Spakovsky and Ed Haden. Ex. D to Brinkmann Decl. [Dkt. # 13-2]. According to the government's declarant, the agency released their names since their heightened degree of "engagement" with the government reduced their privacy interest: von Spakovsky "authored the original e-mail and publicly acknowledged it," and Haden "affirmatively forwarded that e-mail to the government." Brinkmann Decl. ¶ 15.

On April 19, 2018, the government filed a motion for summary judgment arguing that it was justified in continuing to withhold the other three names and an incidental reference to von

6

Spakovsky's personal travel plans in the email.  Def.'s Mot. for Summ. J. [Dkt. # 13] ("Def.'s Mot."); Mem. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 13-1] ("Def.'s Mem.") at 6–11. Plaintiff opposed that motion, and filed its own motion for summary judgment challenging those redactions, and arguing in the alternative that the Court conduct an *in camera* review.  Pl.'s Mot. for Summ. J. [Dkt. # 15]; Mem. in Opp. to Def.'s Mot. & in Supp. of Pl.'s Cross-Mot. for Summ. J. [Dkt. # 15] ("Pl.'s Cross-Mot.").  Those motions are fully briefed and ripe for decision.  *See also* Def.'s Combined Reply in Further Supp. of its Mot. for Summ. J. & Opp. to Pl.'s Cross-Mot. [Dkt. # 17] ("Def.'s Reply"); Pl.'s Reply in further Supp. of its Mot. for Summ. J. [Dkt. # 19] ("Cross-Reply").

The Redacted Email Chain

The redacted email chain begins with an email dated February 22, 2017 from Hans von Spakovsky, who identifies himself as the "Manager, Election Law Reform Initiative and Senior Legal Fellow" at The Heritage Foundation.  Redacted Email.  When he sent the email, the Commission had not yet been established, and von Spakovsky had not yet been appointed a Commissioner.

The email is titled "voter fraud commission," and it contains three redacted names which the government refers to as individuals b6-1, b6-2, and b6-3.  Redacted Email; Brinkmann Decl. ¶ 9.  It is addressed to two individuals; one of them is Ed Haden, identified by the government as a "private attorney" who "formerly served on Mr. Sessions' Senate staff," Brinkmann Decl. ¶ 10 n.1, and the other recipient is "individual b6-1" whose name has not been disclosed.  *See* Redacted Email.  The email was copied to a third addressee, "individual b6-2," and the email purports to be communicating concerns shared by that individual and von Spakovsky.  *See id.* ("(b)(6)-2 and I are concerned that this commission is being organized in a way that will

7

guarantee its failure.").  The third unidentified individual, b6-3, is mentioned once in the body of

the email as an expert in the field of voter fraud.  *Id.*

Because of the email's centrality to this suit, it is worth reproducing in full.

Date: February 22, 2017 at 7:36:03 PM CST
To: [(b) (6) - 1] [(b) (6) - Not Challenged] , Ed Haden
Cc: [(b) (6) - 2]
Subject: voter fraud commission

[(b) (6) - 1] Ed,

[(b) (6) - 2] got a very disturbing phone call about the voter fraud commission that Vice President Pence is heading. We are told that the members of this commission are to be named on Tuesday.  We're also hearing that they are going to make this bipartisan and include Democrats. There isn't a single Democratic official that will do anything other than obstruct any investigation of voter fraud and issue constant public announcements criticizing the commission and what it is doing, making claims that it is engaged in voter suppression.  That decision alone shows how little the WHouse understands about this issue.

There are only a handful of real experts on the conservative side on this issue and not a single one of them (including [(b) (6) - 2] and me) have been called other than Kris Kobach, Secretary of State of Kansas. And we are told that some consider him too "controversial " to be on the commission  If they are picking  mainstream Republican officials and/or academics to man this commission it will be an abject failure because there aren't any that know anything about this or who have paid any attention to this issue over the years.

[(b) (6) - 2] and I are concerned that this commission is being organized in a way that will guarantee its failure.  We are astonished that no one in the WH has even bothered to consult with us or [(b) (6) - 3] despite the fact that the three of us have written more on the voter fraud issue than anyone in the country on our side of the political aisle.  I think you know from the white paper we sent you that based on our experience we have thought long and hard about what needs to be done.

[(b) (6) - 4] . My cell is [(b) (6) - Not Challenged] if you need to reach me.

Hans von Spakovsky
Manager, Election Law Reform Initiative and Senior Legal Fellow
Institute for Constitutional Government
The Heritage Foundation
214 Massachusetts Avenue, NE
Washington, DC 20002
[(b) (6) - Not Challenged]

*Id.*

Less than two hours after receiving von Spakovsky's email, Haden forwarded it to Peggi

Hanrahan, an assistant to Attorney General Jeff Sessions, who in turn forwarded it to the

Attorney General on the same day.  Brinkmann Decl. ¶ 10; Redacted Email.

8

The agency's declarant avers that:

> All three of the individuals whose identities continue to be protected by OIP were private citizens at the time the e-mail was sent. None of these individuals sent, forwarded, or otherwise took an active role in the sending or subsequent forwarding to the Attorney General of the e-mail authored by Mr. von Spakovsky. Moreover, none of these individuals have publicly associated themselves with the e-mail or with the specific views presented therein.

Brinkmann Decl. ¶ 11. Based on these considerations, the agency determined that the three individuals' names should be withheld pursuant to FOIA Exemption 6.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo*, and the "'burden is on the agency' to show that requested material falls within a FOIA exemption." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002), quoting *Petroleum Info. Corp. v. United States Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992); *see also* 5 U.S.C. § 552(a)(4)(B). Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In a FOIA action, the Court may award summary judgment solely on the information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973). Such affidavits or

declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). The question in this case is whether the agency has appropriately invoked Exemption 6.

## ANALYSIS

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989), quoting 5 U.S.C. § 552(b)(6). "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature." *Id.* at 875. The relevant inquiry is "the extent of the interference with privacy that would be caused by disclosure of the name, address," or other personal information. *Id.*

When considering the validity of redactions under Exemption 6, the "threshold question is whether the requested information is contained in a personnel, medical, or similar file." *Norton*, 309 F.3d at 32, citing *United States Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982). The parties do not dispute that the information at issue falls within that category. *See* Def.'s Mem. 4–5; Pl.'s Cross-Mot. at 10–11.

Next, the Court must consider whether disclosure of the information at issue – the names of the three individuals in von Spakovsky's email – would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This inquiry involves a two-step process. "The first step . . . requires determining that 'disclosure would compromise a substantial, as opposed to a *de minimis,* privacy interest.'" *Am. Immigration Lawyers Ass'n v. Exec. Office for*

*Immigration Review*, 830 F.3d 667, 673–74 (D.C. Cir. 2016) ("*AILA*"), quoting *Norton*, 309 F.3d at 33 (internal quotation marks omitted).  If the answer is yes, "then the Court must 'balance' the individual's right of privacy against the public interest in disclosure."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), quoting *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).  "In undertaking this analysis, the court is guided by the instruction that, 'under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act.'"  *Norton*, 309 F.3d at 32, quoting *Wash. Post Co. v. United States Dep't of Health and Human Servs*., 690 F.2d 252, 261 (D.C. Cir. 1982).

"[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*."  *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 487 (1994), quoting *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (emphasis in original).  "In other words, disclosure of government records under FOIA is meant to help the public stay informed about 'what their government is up to.'"  *AILA,* 830 F.3d at 674, quoting *Reporters Comm.*, 489 U.S. at 773.

The Court will analyze the privacy interests of the three unidentified individuals separately because their privacy interests may vary depending on the context in which their names appear in the email.  *See AILA*, 830 F.3d at 675, quoting *Judicial Watch*, 449 F.3d at 153 ("Exemption 6 . . . 'does not categorically exempt individuals' identities . . . because the 'privacy interest at stake may vary depending on the context in which it is asserted.'").

## I.      Individual b6-1

Individual b6-1 is one of the two individuals to whom von Spakovsky's email is addressed. *See* Redacted Email. This person's name appears nowhere else in the email chain. *Id.* The government's declarant avers that "[t]his individual has no apparent connection to the views expressed in Mr. von Spakovsky's e-mail and no known active role in the e-mail chain whatsoever," and therefore OIP determined that "this individual has a considerable privacy interest in being affiliated with the e-mail at issue." Brinkmann Decl. ¶ 16. Defendant suggest that revealing the fact that von Spakovsky chose to send the email to the recipient would expose not only the recipient's name, but it might also wrongfully attribute to him or her von Spakovsky's views. Def.'s Mem. at 8.

At this stage of the analysis, the issue of whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest "is not very demanding." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008). According to the D.C. Circuit, the term "substantial" merely means "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. The Court has held that even a "speculative" risk of invasion of privacy may be enough to establish a more than *de minimis* privacy interest. *See, e.g., Norton*, 309 F.3d at 35, 37 (finding that the government had "established only the speculative potential of a privacy invasion without any degree of likelihood" but nonetheless holding that "the asserted privacy interests . . . involve[ed] more than minimal invasions of individual privacy"); *see also Multi Ag Media*, 515 F.3d at 1230, quoting *Norton*, 309 F.3d at 35 (While "not persuaded that the privacy interest that may exist is particularly strong," the Court found that disclosure would risk "more than minimal invasion[ ] of personal privacy.").

In light of those precedents, the Court finds here that the revelation of b6-1's identity would compromise a "substantial," and not merely *de minimis*, privacy interest.[6]   It is possible that some people might draw an inference about b6-1's views based simply on the receipt of the email:  the fact that von Spakovsky wrote to individual b6-1 and Ed Haden to lobby for a position on the Commission suggests that at least von Spakovsky believed that they had some power to influence that decision, and one could infer that he would not have sent that email, and apparently a white paper before that, if he did not also believe they might be receptive to advancing his interests or in accord with his views.

Since the asserted privacy interest involves more than a minimal invasion of individual privacy, the Court must go on to determine whether the public interest in disclosure outweighs the individual privacy concerns.  *See Norton*, 309 F.3d at 33.  Plaintiff argues that the public interest in disclosure is strong because "[r]evealing the identities of others mentioned in or included on the email may reveal additional information about the shaping of the Commission or other roles" in the Administration.  Pl.'s Cross-Mot. at 22.  Plaintiff insists that the "public has a right to know the identities of individuals who had the power to exert influence over the Attorney General and the information the Attorney General received while the Commission was still being formulated and conceived."  *Id.* at 1–2; Cross-Reply at 11–12.  According to plaintiff, the public interest is heightened here because von Spakovsky's "self-advocacy" to join the Commission "may have been effective," and the email at issue in this litigation sparked additional scrutiny by

6    Plaintiff contends that the redactions do not implicate a substantial privacy interest and in support of this argument it quotes a footnote in the Supreme Court's decision in *Department of Air Force v. Rose* which states that "threats to privacy" cannot be "mere possibilities" but rather must be "palpable."    Pl.'s Cross-Mot. at 12, quoting 425 U.S. 352, 380 n.19 (1976).  But plaintiff's reliance on *Rose* is misplaced because the Supreme Court made that broad observation in the course of discussing Exemption 6's legislative history, not in applying the first step of the Exemption 6 analysis which requires the Court to determine whether a more than minimal privacy interest is at stake.

U.S. Senators regarding DOJ's ties to the Commission, including the Attorney General's role in selecting Commissioners. Pl.'s Cross-Mot. at 21–22.

The agency contends that plaintiff has failed to establish that a significant public interest exists because it did not demonstrate that the information in von Spakovsky's email was "acted upon." Def.'s Reply at 10, citing Brinkmann Decl. ¶ 14 (stating that the Attorney General does not have an "official role" in appointing members to the Commission under the terms of the Executive Order and that "OIP did not locate any further discussion or consideration of the von Spakovsky e-mail"). But FOIA does not require the plaintiff to prove that the information was "acted upon." The operative question is whether disclosure would advance FOIA's purpose of helping members of the public stay informed about "what their government is up to." *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted).

Here the Court agrees with plaintiff that disclosure would advance that goal by shedding light on the formation of the Commission by the executive branch. It is undisputed that von Spakovsky's email argued strongly for a particular make-up of the Commission, that his email was forwarded to the Attorney General while these decisions were underway, and that von Spakovsky himself was later appointed to the Commission. *See* Redacted Email. It is also the case that there has been significant public interest related to DOJ's ties to the Commission, including its role in the appointment process. *See* Senators' July 2017 Letter, Senators' September 2017 Letter, Senators' October 2017 Letter.

While it is true that the record does not definitively establish that the email ultimately influenced the Commission, the statements submitted by the government declarant do not rule it

14

out either.[7]  Therefore, the Court finds that revealing b6-1's identity would advance FOIA's purpose because it would allow the public to scrutinize who may have influenced the formation of the Commission and what information the government had when it was making these decisions.  The purpose of FOIA "is to ensure that the Government's activities be opened to the sharp eye of public scrutiny," so that the public is free to evaluate the information for themselves and draw their own inferences and make their own judgments.  *Reporters Comm.*, 489 U.S. at 774.

Since the Court has found a greater than *de minimis* privacy interest and a significant public interest in disclosure, the Court must now balance the two interests to determine whether the privacy stake is "not outweighed by the public interest in disclosure."  *Multi Ag Media*, 515 F.3d at 1232.   In conducting this balancing, the Court is mindful of the directive that "[a]t all times courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly construed."  *Norton*, 309 F.3d at 32 (internal citations and quotation marks omitted).

Given the public interest in the formation of the Commission, and the fact that von Spakovsky's appointment followed the transmittal of the email, there is a public interest in knowing who he asked to weigh in that outweighs the individual's weak privacy interest in shielding that information.  Individual b6-1 was openly named as an additional addressee – rather than blind copied ("bcc") – so the name travelled with the email as it was forwarded to DOJ personnel.  In light of those considerations, along with the "strong presumption in favor of disclosure," *Norton*, 309 F.3d at 32, the Court finds that the public interest in learning the

---

7        The fact that the declarant took pains to say that the none of the three unidentified individuals were in the government "at the time the e-mail was sent" carefully leaves open the possibility that one or more joined the Administration thereafter, which would make their involvement of greater public import.  Brinkmann Decl. ¶ 13.

identity of individual b6-1 outweighs the relatively weak privacy interest the government identified. Accordingly, the government must disclose b6-1's name.

## II. Individual b6-2

Individual b6-2 is central to the email, and at all points von Spakovsky purports to be advancing a joint point of view:

- (b)(6)-2 got a very disturbing phone call about the voter fraud commission that Vice President Pence is heading. We are told that the members of this commission are to be named on Tuesday. We're also hearing that they are going to make this bipartisan and include Democrats.

- There are only a handful of real experts on the conservative side on this issue and not a single one of them (include (b)(6)-2 and me) have been called other than Kris Kobach, Secretary of State of Kansas. And we are told that some consider him too "controversial" to be on the commission[.]

- (b)(6)-2 and I are concerned that this commission is being organized in a way that will guarantee its failure. We are astonished that no one in the WH has even bothered to consult with us or (b)(6)-3 despite the fact that the three of us have written more on the voter fraud issue than anyone in the country on our side of the political aisle.

- I think you know from the white paper we sent you that based on our experience we have thought long and hard about what needs to be done.

Redacted Email.

The government declarant points out that "[a]lthough the text of the e-mail might suggest that individual b6-2 shares the views expressed therein, individual b6-2 did not sign the e-mail, nor did this person weigh in on the e-mail." Brinkmann Decl. ¶ 17. Based on that, the agency believes "it is possible that the individual b6-2 did not, in fact, share the views being expressed or had a different perspective in the matter." *Id.* The agency states that it has been unable to verify whether individual b6-2 has publicly taken the positions attributed to him or her. *Id.* Consequently, it asserts that "there is a privacy interest where a personal opinion is attributed to

16

an individual who has not actively chosen to share that opinion with the government or to take such a position publicly." *Id.*

The government's characterization of this individual as one who has not actively shared his or her opinion is entirely at odds with the text of the email, in particular the reference to the white paper that "we" sent previously. But since even a "speculative" privacy risk can meet the threshold requirement of a greater than minimal privacy interest, *Norton*, 309 F.3d at 37, the Court finds that there is at least a possibility that b6-2's views were inaccurately portrayed, and that he or she would have an interest in remaining unknown.

In any event, the heart of the analysis is whether this weak privacy interest outweighs the strong public interest in disclosure. The Court finds it does not. Here in particular, the public has an interest in knowing who may have attempted to influence the appointment process, and whether individual b6-2 was ultimately named a Commissioner or added to the Administration. These interests, which squarely contribute to the public's understanding of the Government's operations or activities, *see Fed. Labor Relations Auth.*, 510 U.S. at 487–88, easily outweigh the highly speculative privacy interest the agency put forth, and so the redaction under Exemption 6 cannot stand.

## III. Individual b6-3

Individual b6-3's name appears once in the email. Von Spakovsky wrote:

> We are astonished that no one in the WH has even bothered to consult with us or (b)(6)-3 despite the fact that the three of us have written more on the voter fraud issue than anyone in the country on our side of the political aisle.

Redacted Email.

The government's declarant avers that individual b6-3 is "merely mentioned" in the email and "does not appear to have any role at all in the e-mail other than this passing reference to

17

him." Brinkmann Decl. ¶ 17. The declarant adds that the agency has been "unable to identify any evidence" that individual b6-3 has "publicly taken positions that Mr. von Spakovsky has attributed" to him or her, *id.*, and thus, the agency maintains that individual b6-3 has a substantial privacy interest in his or her name. Def.'s Reply at 7.

Plaintiff argues that "[s]ince b6-3 has evidently written publicly in [the voter fraud] field, b6-3 has no serious privacy interest in being identified by Mr. von Spakovsky as a relevant authority on matters of voter fraud." Pl.'s Cross-Mot. at 19. But that does not address, the agency's concern that von Spakovsky may have erroneously characterized individual b6-3 as being on his "side of the political aisle," and apparently the agency has not been able to verify the accuracy of that statement, notwithstanding von Spakovsky's representations.

While a privacy interest in avoiding a possibly inaccurate portrayal has not been established with any degree of likelihood, the Court finds that the risk is more than minimal, and that is all that is required to move on to the balancing test. *Norton*, 309 F.3d at 35, 37. The Court finds that the public has an interest in knowing whether b6-3 was ultimately appointed to the Commission, and in generally scrutinizing the formation of the Commission, and these strong interests, coupled with the "strong presumption" favoring disclosure, *id.* at 32, are enough to outweigh the relatively weak privacy interest here. As such, the agency must disclose individual b6-3's name.

## IV. Redacted Personal Travel Plans, b6-4

Finally, plaintiff challenges the redaction designated "b6-4" which pertains to von Spakovsky's personal travel plans.[8] Apparently von Spakovsky described his upcoming travel plans "in providing details about his availability for potential further discussion." Brinkmann Decl. ¶ 19. The government contends that it was "unable to identify any FOIA public interest in disclosure of this information." *Id.* The Court agrees. FOIA "ensure[s] that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Reporters Comm.*, 489 U.S. at 774 (emphasis in original). The Court finds that von Spakovsky has a privacy interest in his personal travel plans, and that disclosure of his schedule or destination would reveal nothing about the Government's operations.[9] Therefore, redaction b6-4 will stand.

---

8    Plaintiff does not appear to challenge this redaction in the complaint it filed. *See* Compl., "Requested Relief," at 6–7 (seeking that the Court "[o]rder that the redacted names in the documents sought by the Plaintiff's Request . . . are public under 5 U.S.C. § 552 and must be disclosed," and "[o]rder Defendant DOJ to disclose the responsive records with all names unredacted").

9    Plaintiff argues that since the government declarant indicated that the redactions concerned personal travel plans but also provide "details about [von Spakovsky's] availability for further discussion," Pl.'s Cross-Mot. at 25, citing Brinkmann ¶ 19, that the "public has an interest in knowing what specific offer for further discussion Mr. von Spakovsky made in this email." *Id.* Plaintiff urges the Court to review the full statement *in camera* to determine whether Exemption 6 was appropriately invoked. *Id.* To the extent that plaintiff is suggesting that there is segregable information in the single-line redaction, the Court accepts the agency's assertion that "no further information may be segregated for release without revealing information that is properly withheld pursuant to FOIA Exemption 6." Brinkmann Decl. ¶ 20. But even if the redaction included von Spakovsky's "availability" apart from his personal travel plans, again this information would still have no bearing on matters of public interest.

# CONCLUSION

For the reasons stated, the Court will deny defendant's motion for summary judgment, [Dkt. # 13], with respect to redactions (b)(6)-1, (b)(6)-2, and (b)(6)-3, and grant defendant's motion with respect to redaction (b)(6)-4.

The Court will grant plaintiff's motion for summary judgment, [Dkt. # 15], with respect to redactions (b)(6)-1, (b)(6)-2, and (b)(6)-3, and deny plaintiff's motion with respect to redaction (b)(6)-4 and its request for an *in camera* review of the withheld material.

The government must release the names of individuals b6-1, b6-2, and b6-3 since such disclosure would not "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 15, 2019